IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BOSSIE RICARDO JAMISON,

    Plaintiff,

VS.                                        No. 06-1090-T/An

STEPHEN DOTSON, ET AL.,

    Defendants.

ORDER ASSESSING $350 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Bossie Ricardo Jamison, Tennessee Department of Correction ("TDOC") prisoner number 74630, an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on April 28, 2006. The Clerk shall record the defendants as WCF Warden Stephen Dotson; TDOC Assistant Commissioner Roland Colson; Nechol Owens, the Disciplinary Board Chairperson; WCF Assistant Warden for Operations Robert Adams; Sherri Hensley, a Program Manager; Amy Trotter, a Job Coordinator; Mr. Scott, Internal Affairs Coordinator at the WCF; Mr. Pritchard, Chief of Security at the WCF; Ms. Beauregard, a Counselor and Grievance Board member; and Mr. Gooch, who is alleged to be responsible for maintenance and a Grievance Board member.

I.      Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 19159(a)-(b), all prisoners bringing a civil action must pay the full filing fee of $350.00 required by 28 U.S.C. § 1914(a).[1] The statute merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted an *in forma pauperis* affidavit and a certified copy of his trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

---

[1] Effective April 9, 2006, the civil filing fee was increased to $350.00.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.  All payments and account statements shall be sent to:

> Clerk, United States District Court, Western District of Tennessee, 262 U.S. Courthouse, 111 S. Highland Ave., Jackson, TN 38301

and shall clearly identify plaintiff's name and the case number on the first page of this order.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2).  If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address.  If still confined he shall provide the officials at the new prison with a copy of this order.  If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.  The Clerk is further ORDERED to forward a copy of this order to the warden of the WCF to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

However, the Clerk shall not issue process or serve any other papers in this case.

II.     Analysis of Plaintiff's Claims

The complaint alleges that plaintiff, an African American inmate, lost his prison job after he failed a drug test in June, 2005. (Compl., ¶¶ 1-4.) After providing a urine sample but before the results were received, plaintiff, who apparently anticipated that he would fail the test, contacted defendant Scott about keeping his job. Id., ¶¶ 5-6. Scott allegedly promised plaintiff that he would keep his job and would not be disciplined if he provided information about unlawful activities by staff and inmates at the WCF. Id., ¶¶ 7, 12. Plaintiff alleges he provided useful information but lost his job anyway and the disciplinary charge was not dropped. Id., ¶¶ 8-12. Defendant Owens told the plaintiff that defendants Scott and Dotson wanted him to know that he needed to provide more information. Id., ¶ 13. Plaintiff provided information about an inmate who was planning to escape, but he still lost his job. Id., ¶¶ 14-15. Plaintiff contends that white inmates who fail drug tests do not necessarily lose their jobs. Id., ¶¶ 16-22. The plaintiff also apparently was convicted of a class B disciplinary offense. See id., ¶ 23.

On December 8, 2005, the facilitator of the pre-release class asked plaintiff to become her aide, but defendants Hensley and Trotter denied plaintiff's request due to his disciplinary conviction. Id., ¶ 30. Plaintiff further asserts that defendants Trotter and Hensley have retaliated against him because he opposed wrongful policies and practices. Id., ¶ 48. Plaintiff was notified on or about December 14, 2005 that he could not be placed on registers for jobs as a commissary helper, newspaper aide, counselor and chaplain's aide because of his disciplinary conviction. Id., ¶ 23. Plaintiff contends that white inmates with gang

affiliations are permitted to work as inmate advisors, contrary to policy, id., ¶ 33; see also id., ¶ 32, and that white inmates with disciplinary convictions are allowed to keep their jobs, id., ¶¶ 27-28, 50, 55.

As a result of his complaints, plaintiff contends he is not permitted to participate in volunteer self-help drug education programs and to obtain a job. Id., ¶ 37. He contends he was denied parole in November 2005 because he had not participated in a drug education program. Id., ¶ 41. Plaintiff also attempted to run for a position as unit representative. That position is normally filled through an election but, on or about March 1, 2006, the unit staff appointed another inmate without a vote. Id., ¶ 38. Plaintiff contends he is being discriminated against on the basis of his race, color, and national origin. Id., ¶ 39. Plaintiff was also denied the opportunity to participate in other programs, including "Time Out for Men." Id., ¶ 54; see also id., ¶¶ 40, 49. Although he was assigned a job as a commercial cleaner on April 20, 2006, that job is an unskilled position. Plaintiff did not obtain the position of newspaper aide, which is more commensurate with his qualifications, due to facial discrimination and retaliation by defendant Trotter. Id., ¶ 56.

Plaintiff seeks injunctive relief and compensatory and punitive damages.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a district court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force

5

or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C. § 1997e(a):

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Knuckles El, 215 F.3d at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in a timely manner to a grievance), *cert. denied*, 544 U.S. 920 (2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a *sua sponte* dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot exhaust those remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently has held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains

any unexhausted claims. Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir. 2005); see also Rinard v. Luoma, 440 F.3d 361 (6th Cir. 2006) (prisoner may not amend his complaint to delete defendants against whom claims have not been exhausted).

In this case, the plaintiff has not satisfied his burden of demonstrating, through particularized averments, that he exhausted his administrative remedies as to each of his claims. The plaintiff filed a grievance (Grievance No. 11140) on or about January 3, 2006 against "the Wardens office and Jobs." The grievance asserts the plaintiff is being subjected to racial discrimination and retaliation by virtue of the fact that he is unable to find employment as a teacher's aide or inmate advisor due to his disciplinary conviction. Plaintiff filed an amended to his grievance on or about January 11, 2006 that names defendant Hensley. Defendant Hensley submitted a supervisor's response, dated January 4, 2006, that states that plaintiff is assigned to the position of newspaper worker but is not qualified for the position of teacher's aide because he had a disciplinary conviction within the previous twelve months. A hearing was held on January 11, 2006, and the grievance committee concurred with the supervisor. The warden concurred with the proposed response on January 13, 2006, and the TDOC concurred on February 27, 2006. Accordingly, plaintiff has exhausted a claim against defendant Hensley and, arguably, defendants Dotson and Adams (named, collectively, as "the Warden's office") and defendant Trotter (named as "Jobs," along with defendant Hensley).

Plaintiff has submitted copies of no other grievances, and the factual allegations concerning the other grievances he filed do not suffice to demonstrate that he exhausted each

of his claims against each of the defendants. The complaint asserts, without elaboration, that plaintiff filed a grievance in or around July, 2005, which was dismissed. The complaint does not describe in detail the content of that grievance, the defendants who were named therein, and the precise reasons why it was "dismissed." The complaint further alleges that plaintiff submitted a Title VI racial discrimination grievance on an unspecified date that was rejected because it did not meet Title VI standards, (Compl., ¶ 24), but there is no indication when that grievance was allegedly submitted, the content of the grievance, or the defendants named therein.[2] Moreover, the complaint is silent concerning the plaintiff's efforts to exhaust many of his claims, including but not limited to the claim concerning the job offered to him on April 20, 2006, the day before the plaintiff signed this complaint. The complaint also contains no indication that the plaintiff exhausted his claims against defendants Colson, Scott, Pritchard, Beauregard, and Gooch, as required by Moorer v. Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her), Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003), and Curry, 249 F.3d at 504. Therefore, plaintiff has not exhausted this claim against any of the defendants in his or her individual capacity. For this reason alone, the complaint must be dismissed in light of Jones Bey and Rinard.

---

[2] The complaint also asserts that another Title VI grievance, which sounds very much like Grievance No. 11140, was returned by defendant Adams without processing. (Compl., ¶ 25.) The documents attached to the complaint indicate that Grievance No. 11140 was completely exhausted. If ¶ 25 of the complaint refers to another grievance, the complaint provides no information about the content of the grievance, the defendants named therein, and the specific reason why it was rejected.

The Sixth Circuit has stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*." Baxter, 305 F.3d at 489. Moreover, pursuant to the decisions in Jones Bey and Rinard, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. Accordingly, the Court DISMISSES the complaint, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[3]

III.   Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal *in forma pauperis*. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this

---

[3] As the Sixth Circuit has explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Baxter, 305 F.3d at 489.

matter by plaintiff is not taken in good faith.

The final matter to be addressed is the assessment of the appellate filing fee if plaintiff appeals the dismissal of this case.[4] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(a)-(b).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] Effective April 9, 2006, the fee for docketing an appeal is $450. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee.